IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEONORA GLUNT,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **LIFE INSURANCE COMPANY** | : | |
| **OF NORTH AMERICA,** | : | **No. 11-3105** |
| Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                           **January 24, 2012**

In this Employee Retirement Income Security Act ("ERISA") case, Leonora Glunt claims that she is disabled and unable to work. She seeks short-term disability benefits under a policy she had through her employer, Quest Diagnostics, which was administered by the Life Insurance Company of North America ("LINA"). LINA contends that Glunt has failed to produce satisfactory evidence that she qualifies as disabled under the policy and therefore refuses to pay her short-term disability benefits. Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will grant Glunt's motion and deny LINA's motion.

### I.  BACKGROUND

#### A.  Short-Term Disability Policy

Glunt was a phlebotomist at Quest Diagnostics. LINA provided short-term disability ("STD") coverage for Quest employees. (Def.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. [LINA SOF] ¶¶ 1-3.) The policy defines "disabled" as follows:

**Definition of Disability/Disabled**

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

>1. unable to perform the material duties of his or her Regular Occupation; and
>2. unable to earn 80% or more of his or her Covered Earnings from working in his or her Regular Occupation.

(Joint Appendix ["J.A."] at 105.) The policy defines "Regular Occupation" as:

>[t]he occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor marked in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.

(*Id.* at 124.) The policy also contains provisions that require the claimant to provide "satisfactory proof of Disability before benefits will be paid" and "continued proof of the Employee's Disability for benefits to continue." (*Id.* at 114.)

### B.  Glunt's Medical History and LINA's Review

Glunt's last day of work was on April 27, 2010, due to a "panic disorder." (*Id.* at 3.) She claimed that she was suffering from "palpitations, insomnia, racing thoughts, psychomotor agitation, feelings of losing control, and difficulty concentrating." (*Id.* at 178.) On that same day, Glunt's treating physician, Dr. Gayle Sisbarro, noted Glunt's various stressors, that Glunt's mood was anxious and nervous, that Glunt had insomnia, and that Glunt's speech was rapid and pressured. (*Id.* at 179.)

Glunt filed a claim with LINA for STD benefits on May 3, 2010. (*Id.* at 3.) The following day, Glunt again saw Dr. Sisbarro. (*Id.* at 181.) Dr. Sisbarro reported that Glunt was tolerating her psychiatric medicine, that employment concerns were a continued stressor for Glunt, and that Glunt's depression was gradually improving. (*Id.*) On May 8, Dr. Sisbarro filled out a behavioral health questionnaire claim form in which she noted Glunt's speech as racing, mood as anxious, and affect

as nervous, but observed that Glunt is "able to carry out all [activities of daily living] without help or supervision." (*Id.* at 176.) Dr. Sisbarro concluded, however, that Glunt needed counseling and to reduce medicine prior to returning to work. (*Id.*) She listed a target date of June 1, 2010 for Glunt to return to work and stated that it was yet to be determined whether Glunt could return to work full time. (*Id.*) Dr. Sisbarro also wrote that Glunt could perform her job duties in an alternative work setting if she had a manageable work load, but that she was currently overworked. (*Id.* at 177.)

On May 24, 2010, Dr. Sisbarro wrote a letter to certify that Glunt's condition left her unable to work. (*Id.* at 172.) The letter stated that Glunt's increase in workload and responsibilities triggered an anxiety acute stress reaction, which caused difficulty in completing activities of daily living and sleeping. (*Id.*) Dr. Sisbarro noted that she was regulating Glunt's medication, that Glunt was attending physical therapy for ongoing back issues, and that Glunt needed two additional weeks to adjust to medicine and to continue therapy, which should help her ability to function in a fast-paced work environment. (*Id.*) Dr. Sisbarro estimated a return-to-work date of June 7, 2010. (*Id.*)

On May 19, 2010, LINA requested from Dr. Sisbarro Glunt's restrictions and limitations, (*id.* at 84), and on May 24, 2010, LINA requested Glunt's physical therapy records on May 24. (*Id.* at 79.) Prior to receiving the requested information, on May 25, 2010, Venus Thompson, a nurse case manager for LINA, reviewed Glunt's medical information and concluded that the record did not support a finding that Glunt was disabled. To support her conclusion, Thompson cited Dr. Sisbarro's failure to: (1) identify a Global Functional Impairment; (2) identify the condition with regard to severity, intensity, and duration; (3) note medications; and (4) list a diagnosis for the back pain. (*Id.* at 30.) Therefore, by a letter dated May 25, 2010 and signed by Christine Petronio, a disability claim manager, LINA denied Glunt's claim for STD benefits. (*Id.* at 73.)

##### C. Glunt's Appeal

On June 2, 2010, Glunt appealed LINA's denial of STD benefits. (*Id.* at 162-65.) Glunt's doctors submitted additional information in support of her claim for benefits. For example, on June 4, 2010, Dr. Sisbarro stated that Glunt was functioning on a 55–60 Global Assessment of Functioning ("GAF") scale and had panic attacks, difficulty sleeping, and difficulty in activities of daily living. (*Id.* at 166.) A GAF score of 55–60 corresponds with either moderate symptoms—such as flat affect, circumstantial speech, or occasional panic attacks—or moderate difficulty in social and occupation functioning. (LINA SOF ¶ 20(b) n.2; (Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. [Glunt SOF] ¶ 9.) Dr. Sisbarro also noted that she was exploring prescribing additional anxiety medication based on recommendations of Glunt's psychologist and that Glunt had started counseling services for ongoing anxiety issues. (J.A. at 166.) Dr. Sisbarro wrote that Glunt needed two additional weeks to adjust to medicine and assess the benefit of counseling therapy, and she estimated a return-to-work date of June 18, 2010. (*Id.*) GAF scores measure an individual's psychological, social, and occupational functioning on a scale of one to one hundred. (Glunt SOF ¶ 8.)

On June 22, 2010, Dr. Sisbarro updated her claim form response and noted that Glunt's condition mandated follow-up treatments and a reduced work schedule. (J.A. at 155-56.) Dr. Sisbarro listed multiple medical diagnoses for Glunt, including anxiety, depression, acute stress reaction, and back pain. (*Id.*) She also listed Glunt's medication, including Celexa for depression, Klonopin for anxiety, and Naproxen for back pain, noting that all of the medications were new to Glunt since the onset of her symptoms. (*Id.* at 156.) Dr. Sisbarro stated that ongoing therapy with a counselor was required. (*Id.*)

4

On June 28, 2010, Linda Karas, Glunt's psychologist, also wrote a letter, which diagnosed Glunt with an Adjustment Disorder with Mixed Anxiety and Depressed Mood. (*Id.* at 157.) Karas noted that Glunt's symptoms persisted in response to chronic stressors with the potential of escalation to a Major Depressive Disorder and an Anxiety Disorder if Glunt's work stress was not alleviated. (*Id.*) Karas noted, however, that she did not know if Glunt was actually underperforming at her job. (*Id.*)

On August 23, 2010, Maureen Clarke, a nurse case manager for LINA, reviewed Glunt's file. (*Id.* at 150-01.) Clarke found that, despite Dr. Sisbarro's new letter noting Glunt's inability to work, no additional clinical information was provided to support Glunt's appeal. (*Id.*) Clarke also found that Karas's letter provided insufficient clinical information. (*Id.*) Clarke concluded that the record contained insufficient clinical information to support a functional impairment and insufficient clinical documentation of severity, intensity and duration of symptoms to support a global psychiatric functional impairment. (*Id.*)

On August 25, 2010, LINA issued its decision on Glunt's appeal in a letter from Lou Ann Pomposelli, appeal claim manager, affirming LINA's previous decision to deny benefits. (*Id.* at 64-66.) Pomposelli found that the clinical evidence on file did not support a functional impairment to the degree that Glunt would have been unable to perform her duties as a phlebotomist. (*Id.* at 65.) The letter stated that the documented physical and psychological exam findings from Dr. Sisbarro were relatively normal and that Dr. Karas did not provide clinical exam findings, a treatment plan or functional ability/deficits. (*Id.*)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n.* 293 F.3d 655, 665 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987); *see also St. Paul Fire & Marine Ins. Co. v. Primavera Software, Inc.*, Civ. A. No. 09-3908, 2011 WL 3438077, at *3 (E.D. Pa. Aug. 5, 2011).

## III.  DISCUSSION

The parties agree that this Court must consider Glunt's claim for STD benefits using a *de novo* standard of review. *See Viera v. Life Ins. of N. Am.*, 642 F.3d 407, 414-18 (3d Cir. 2011) (holding that policy language requiring "proof satisfactory" to the insurance company for a finding

of disability did not shield insurance company from *de novo* review). Under a *de novo* standard, the reviewing court must determine whether the administrator's decision to deny benefits was wrong and afford the administrator's decision no deference or presumption of correctness. *Id.* at 413-14. Rather, "[t]he court must review the record and determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." *Id.* at 414.

LINA concedes that Glunt established that she suffered from anxiety and stress, but contends. that Glunt has failed to establish, as required by the policy, that her anxiety and stress rendered her functionally unable to perform her job as a phlebotomist. According to LINA, "[w]ithout findings from her treating doctors to support restrictions or limitations on [Glunt's] ability to work, LINA properly determined that Plaintiff was not impaired to the point that she could not perform her job." (LINA's Mem. of Law in Supp. of Mot. for Summ. J ["LINA Mem."] at 8.) LINA argues that Glunt's medical record did not support a finding of a Psychiatric Functional Impairment based on Dr. Sisbarro's failure "to identify [Glunt's] signs and symptoms in regards to severity, intensity, and duration." (J.A. at 73.)

Having reviewed the record, this Court concludes that LINA erred and that Glunt produced evidence satisfactory to show that she was disabled under LINA's policy. LINA's insistence on a statement of severity, intensity, duration, and frequency of Glunt's symptoms to demonstrate functional incapacity adds an additional hurdle not required by the policy. LINA's policy includes no requirement that an insured can qualify as disabled only if she submits evidence of intensity and severity to LINA. Nor does the policy foreclose a participant's medical providers' assessments based on a failure of using such magic words as "severity" or "intensity." On the contrary, the policy only requires the claimant to provide "satisfactory proof of Disability before benefits will be paid." (*Id.*

at 114.) Regardless, here, Glunt's physicians had provided satisfactory proof of disability that indicated Glunt's severity, intensity, and duration of symptoms related to her anxiety and stress. The severity of Glunt's anxiety was clear from Dr. Sisbarro's description of Glunt's panic attacks and her inability to focus, concentrate, sleep, or eat. The intensity of her anxiety was demonstrated through Glunt's 55–60 GAF score, among other findings of palpitations, insomnia, and racing thoughts. Finally, the duration of Glunt's symptoms was identified in Dr. Sisbarro's statement that "[o]nset of symptoms was approximately several weeks ago, gradually worsening since that time" (*id.* at 178), as well as by the dates on the office visit notes from Glunt's multiple office visits to Dr. Sisbarro and Karas.

      Furthermore, LINA's decision to forego an independent medical examination of Glunt, given the subjective nature of her anxiety and its resulting limitations, further limited its ability to evaluate contrary medical evidence. *See Ricca v. Prudential Ins. Co. of Am.*, 747 F. Supp. 2d 438, 446 (E.D. Pa. 2010) ("[I]n a subjective disability case, an administrator who proceeds without an independent medical examination is vulnerable to the uncomfortable argument that the administrator gave greater weight to the opinions of medical experts who did not physically examine the plaintiff than to those who did.") (internal quotation marks omitted). The only medical evidence in the record was submitted by Dr. Sisbarro, a family practice physician, and Karas, a licensed psychologist. These doctors provided diagnoses, calculated Glunt's GAF score, and prescribed medications to treat Glunt's conditions. Diagnosis of psychiatric conditions such as an acute anxiety disorder and an adjustment disorder with mixed anxiety and depressed mood necessarily requires a doctor's subjective evaluation of the patient and her mental condition. *Long v. Astrue*, Civ A. No. 08-1787, 2009 WL 5033973, at *1 (E.D. Pa. Dec. 21, 2009) ('[A] GAF rating 'is a subjective determination

of the physician's judgment (on a 100-point scale) of the claimant's overall ability to function on that particular day, excluding physical and environmental impairments.'") (quoting *Diagnostic and Statistical Manual of Mental Disorders IV-TR*, at 34 (4th ed. 2000)).

Instead of conducting its own independent medical examination, LINA's nurses merely reviewed the doctors' paper records and determined that Glunt was capable of performing as a phlebotomist. "In accepting [a doctor's] medical diagnosis, but refusing to accept his conclusions as to what the practical and functional effects of that diagnosis are, [the administrator] too narrowly constricted the role of a physician." *Edgerton v. CNA Ins., Co.*, 215 F. Supp. 2d 541, 551 (E.D. Pa. 2002) (finding that a plan administrator's selective acceptance of a doctor's diagnosis but rejection of his prognosis as to the effects of the diagnosis "impermissibly limits the scope of [the doctor's] opinion that the plaintiff was disabled"). Here, LINA ignored Glunt's doctors' findings regarding her limitations and restrictions on her ability to work based on her medical conditions.

LINA argues that the medical record does not demonstrate "findings from [Glunt's] treating doctors to support restrictions or limitations on [Glunt's] ability to work." (LINA Mem. at 8.) But there is no basis for this contention, given the numerous statements made by Glunt's treating physician that she could not work as a phlebotomist because of her medical conditions. In Dr. Sisbarro's earliest behavioral health questionnaire, dated May 8, 2010, she noted that Glunt needed counseling and to "wean off" medicine prior to returning to work. (J.A. at 176.) In a subsequent letter from Dr. Sisbarro, dated May 24, 2010, she wrote that Glunt was unable to work because of her anxiety acute stress reaction, which caused difficulties in her activities of daily living, with sleep, and with family interpersonal relationships (*Id.* at 172). Dr. Sisbarro again certified on June 4, 2010 that Glunt was still unable to work because of the anxiety acute stress reaction, which was causing

9

panic attacks and limiting Glunt's functioning to a 55–60 on a GAF scale, in addition to the previously listed problems. Once again, on June 22, 2010, Dr. Sisbarro stated in an updated claim form response that, due to Glunt's acute stress, Glunt was unable to focus, concentrate, sleep, or eat, and that she was having difficulty with activities of daily living and interpersonal relationships and that it was medically necessary for Glunt to be absent from work during the flare-ups. (*Id.* at 154-55.)

Despite the numerous statements from Glunt's treating physician regarding Glunt's inability to work, LINA selectively pointed to evidence in the record to justify a denial of Glunt's STD benefits claim. LINA argues that Dr. Sisbarro's and Karas's statements merely indicated that Glunt needed a manageable workload, but LINA ignored contrary statements in the same doctors' submissions that prevented Glunt from working due to her medical condition. LINA's selective reading of the medical record is impermissible. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008) (finding that an administrator's denial of a claim for benefits was an abuse of discretion when a plan emphasized certain evidence supporting denial of benefits but "deemphasized other reports suggesting a contrary conclusion"); *Ricca v. Prudential Ins. Co. of Am.*, 747 F. Supp. 2d 438, 445 (E.D. Pa. 2010) ("An administrator may not selectively consider and credit medical opinions without articulating its thought processes for doing so."); *Holzschuh v. UNUM Life Ins. Co. of Am.*, Civ. A. No. 02-1035, 2002 WL 1609983, at *8 (E.D. Pa. July 18, 2002) ("[C]ourts have overturned adverse benefits decisions based upon such selective reading of medical records.").

Under LINA's policy, Glunt was disabled if she was not able to perform the material duties of a phlebotomist. Based on the policy's definition of "Regular Occupation," the Court must look to the job of a phlebotomist as "it is normally performed in the general labor market in the national economy," not at the specific work tasks that Glunt performed at her particular Quest Diagnostics

location. However, the parties dispute the relevance of *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381 (3d Cir. 2003), which found the unambiguous plain meaning of "Regular Occupation" to be "the usual work that the insured is actually performing immediately before the onset of disability." *Id.* at 385. The Court concludes that *Lasser* does not apply here because the insurance policy in that case left the phrase undefined, whereas here, the LINA policy defined "Regular Occupation," such that Glunt's job description is based on the duties of the typical phlebotomist as the job is performed nationally. LINA also seeks to distinguish *Lasser* to argue that Glunt's complaints of being overworked at her Quest Diagnostics location are irrelevant. While the Court need not consider Plaintiff's specific job duties and workload at her Quest Diagnostics location, it must still consider her ability to perform the duties of a typical phlebotomist in the national economy based on the evidence in the administrative record.

      Glunt is obligated to demonstrate, through the statements of her doctors and her medical records, that her anxiety and stress disorders prevented her from performing as the typical phlebotomist in the national economy. While there were repeated references in the record to Glunt being overworked at her Quest Diagnostics location, as LINA noted, that is an irrelevant factor in the analysis of Glunt's ability to work as the typical phlebotomist. However, ultimately, this Court's determination of Glunt's inability to work is based only on medical evaluations of Glunt regarding her diagnoses and resulting limitations. Dr. Sisbarro's conclusions on Glunt's restrictions and limitations considered Glunt's ability to work as a phlebotomist, noting that the primary duties include "drawing blood, running urine drug screens, physicals and all paperwork involved." (J.A. at 166.) The typical phlebotomist in the general labor market has numerous additional and wide-ranging duties, including preparing equipment, identifying specimens, communicating with patients

on collection procedures, entering patient orders in the computer, lifting or controlling a resistive child, bending to draw blood from a patient at a difficult angle, and physically protecting faint patients from injuring themselves. *Desmond v. Yale-New Haven Hosp., Inc.*, 738 F. Supp. 2d 331, 349 (D.Conn. 2010) (citing *Dreiling v. Mowery Clinic, LLC*, Civ. A. No. 06-1065, 2007 WL 2893581, at *23 (D. Kan. Sept. 28, 2007). LINA had no basis to believe that Glunt, while functioning on a 55–60 GAF score, suffering from panic attacks, and having difficulty concentrating and sleeping, could safely and reliably take blood from patients, along with her other duties assisting, advising, and protecting patients. The Court credits Dr. Sisbarro's determination that Glunt was not capable of performing the duties of a phlebotomist and finds that LINA erred in its determination that Glunt was not disabled from working as a phlebotomist.

### IV. CONCLUSION

Plaintiff submitted evidence sufficient to satisfy the policy's requirements for disability. Accordingly, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion for summary judgment. Glunt is also entitled to recover prejudgment interest. Judgment will be entered accordingly, pending receipt of the parties' statements as to the exact amount owed to Plaintiff. An Order consistent with this Memorandum will be docketed separately.